# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

ROBERT W. ANDERSON,                    )
                                       )
     Plaintiff,           )
                                       )
  vs.                              )   Case No. 1:07-cv-205
                                       )
AVON PRODUCTS, INC.,                   )
et al.,                                )
                                       )
     Defendants.          )
                                       )


## ORDER

  This matter is before the Court on Defendants' Motion for Summary Judgment (doc. no. 22).  Plaintiff opposes the motion.  Doc. no. 27.  Defendants have filed a reply in support of their motion.  Doc. no. 33.  The matter is also before the Court on Plaintiff's Motion to Strike Exhibit G to Defendants' Motion for Summary Judgment (doc. no. 30), which Defendants oppose.  Doc. no. 34.  For the reasons that follow, Defendants' motion is **GRANTED** and Plaintiff's motion is **DENIED** as moot.

## I.  Introduction

  Plaintiff Robert W. Anderson, an individual who resides in Hamilton County, Ohio, brings this action against his former employer, Avon Products, Inc. ("Avon"), and Avon employees Emilio Shao and Chuck Gutzwiller.  Plaintiff originally filed the action in the Hamilton County, Ohio Court of Common Pleas.  Defendants removed the action

1

to this court based on the court's federal question jurisdiction under 28 U.S.C. § 1331. Plaintiff seeks damages for violations of the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.; 42 U.S.C. § 1981; the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"); the Ohio anti-discrimination laws, Ohio Rev. Code Ch. 4112; and the Ohio public policy against wrongful discharge.

Plaintiff alleges in support of his claims that Avon hired him as a Senior Chemistry Technician on or about December 16, 2002.  He contends that at all relevant times, he was an eligible employee under the FMLA and Avon was an employer as defined under the FMLA and the ADA.  He alleges that in July 2003, he was diagnosed with diverticulosis, which constitutes a disability under the ADA and a serious health condition under the FMLA, and Avon and the supervisors were on actual notice of his disability.  Plaintiff claims that he was granted FMLA leave for this serious health condition during 2003, and from that period onward he was a "qualified individual with a disability" under the ADA who was capable of performing all essential job functions of his job position either with or without reasonable accommodation.  Plaintiff further alleges that from the onset of his diverticulosis in 2003, he was perceived as disabled and/or had a record of an impairment with Avon.

Plaintiff alleges that Defendant Gutzwiller, who was the departmental supervisor, discriminated against Plaintiff based on his disability and acquiesced in race discrimination by minority employees and Defendant Shao against Plaintiff, and that

2

Gutzwiller retaliated against Plaintiff for filing a complaint with the United States Department of Labor, Wage and Hour Division.  Plaintiff contends that Defendant Shao allowed other minority employees to harass him regarding his disability, including by making constant inappropriate inquiries regarding Plaintiff's physical condition, and that Shao discriminated against Plaintiff on the basis of his disability and race with regard to the compensation, terms, conditions and privileges of his employment, including by denying him double shifts in deference to minority employees.  Plaintiff alleges that Defendant Gutzwiller acquiesced in and/or allowed and/or directly participated in the discriminatory misconduct engaged in by Shao and Plaintiff's minority co-workers during 2004 and 2005.

Plaintiff further alleges that on or about June 2, 2005, he suffered from diverticulitis, a potentially life-threatening condition; Defendant Shao, in conjunction with an African-American female supervisor, Katrika Shaw, wrongfully refused to allow Plaintiff any personal leave and informed him that if he did not come into work he would be fired; and Shao threatened to withhold Plaintiff's tuition reimbursement.  Plaintiff claims that Avon improperly denied his requests for leave and/or terminated his employment because of his medical absences and because he complained about Avon's alleged violations of the FMLA.

II.  Background

Plaintiff was hired by Defendant Gutzwiller on behalf of Avon and began his employment with the company in December 2002 as a third-shift Senior Chemistry

Technician.  Avon is an employer as defined under the FMLA.  Plaintiff's duties included

testing and routine analysis of products.  Until February 2005, Plaintiff's supervisor on

the third shift was Brad Myers, a caucasian.  Plaintiff's 2003 evaluation completed by Mr.

Myers states that Plaintiff's "demeanor in dealing with issues is very direct, which can

cause conflict when directed at his peers."  Defts.' exh. 10 (doc. no. 23, att. 19).  In

Plaintiff's 2004 evaluation, Mr. Myers rated Plaintiff as "Does Not Meet Performance

Requirements" in the category of "Interpersonal Skills/Teamwork" and noted under the

heading of "Performance Observations" that Plaintiff "[h]as difficulty creating effective

work relationships."  Defts.' exh. 11 (doc. no. 23, att. 20).

On January 28, 2003, two months after he had started working at Avon, Plaintiff

applied for and took a two-week short-term medical leave.  Avon notified Plaintiff that he

was placed on a Medical Leave of Absence on February 5, 2003.  His return to work date

was February 11, 2003.  Almost two years later, on June 2, 2005, Plaintiff requested a

personal day.  Because his co-worker on the third shift had previously requested and

received approval for a sick day on that date, Ms. Shaw informed Plaintiff that his

personal day was denied as Avon needed the coverage in the lab.  Upon being notified of

the denial, Plaintiff then said that he needed to take a sick day.  After checking with

Avon's nurse about Plaintiff's available sick time, Ms. Shaw informed Plaintiff that he

did not have any remaining sick time so that his only option was to take personal leave or

vacation time, which was unavailable to him on that day because of the coverage issue.

Plaintiff also spoke with Shao, who informed Plaintiff that his request for leave was being

denied and that unless he brought in a doctor's note, the absence would count as an occurrence.  Plaintiff threatened to sue Avon and Shao.  He also left a voicemail message for Ms. Shaw stating that he had spoken to his attorney and Avon was abusing its policy under the FMLA because he had "mentioned his disability before."  Plaintiff did come to work and completed his shift.  He submitted a doctor's note the following day stating that he had been under a doctor's care from June 2nd to 3rd and he would be able to return to work on the latter date.

On November 24, 2005, Plaintiff had a confrontation with a co-worker, Darius Robinson, who is African-American.  According to Avon, Plaintiff left his area of assigned work and initiated the confrontation based on an assumption that Mr. Robinson had shared information with their co-workers regarding Plaintiff's health; witnesses to the incident agreed that Plaintiff was the initiator and aggressor and that Plaintiff was repeatedly told that Mr. Robinson was not involved in discussing Plaintiff's health; Mr. Robinson and other witnesses asked Plaintiff to return to his area; Plaintiff refused to do so and responded by telling Mr. Robinson to "bring it on;" Plaintiff told Mr. Robinson that he was going "to put his foot up his ass;" it was reported that either Plaintiff or Mr. Robinson had to be restrained to prevent a physical altercation; and to diffuse the situation, Mr. Robinson left the lab and went to Avon security to report the incident. After Avon investigated the situation, Defendant Gutzwiller concluded that Plaintiff should be terminated for violating Avon's unprofessional conduct policy and its Workplace Violence Policy, which states as follows:

5

Avon strives to maintain a work environment free from violence.  Avon acknowledges the Associates's right to expect a safe work environment, free from threat of physical harm and the Company's right to protect its property against violent acts.  Workplace violence includes, but is not limited to inappropriate verbal abuse, threatening acts, sabotage, stalking, assault and homicide.

Any Associate who becomes aware of an act of workplace violence must immediately notify his/her Direct Supervisor.  Ignoring a situation that seems mild can lead to a more serious incident.

Any Associate who is found to have engaged in workplace violence may be subject to disciplinary action, up to and including termination of employment.  Discipline will be based on the severity of the infraction.

Plaintiff's employment was terminated effective December 6, 2005.  Gutzwiller recommended that Mr. Robinson have a documented discussion placed in his personnel file.

At some point during the period of Plaintiff's suspension from November 24 until the date of his termination, Plaintiff requested his physician to complete FMLA certification forms related to surgery he was to have in February 2006.  Plaintiff never submitted these forms to Avon because he was notified of his termination prior to the date his physician completed the FMLA forms.

6

### III. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986) (emphasis in original). The court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id

Although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979), the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

7

to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

IV.  Analysis

A.  FMLA Claim

In the complaint, Plaintiff claims that Avon, acting through Defendants Shao and Gutzwiller, violated the FMLA and Ohio public policy based upon the FMLA by threatening to terminate his employment because of his attempt to exercise his rights under the FMLA; by allowing and/or participating in harassment of him regarding his disability and his medical absences; by denying him FMLA leave in June 2005; and by wrongfully terminating him because of his medical absences and/or because he complained about Avon's violations of the FMLA.  In his opposing memorandum, Plaintiff contends that he has established prima facie claims of FMLA interference and discrimination.  He alleges that he suffered from a serious health condition (diverticulitis/diverticulosis); Shao had the authority to grant or deny leave to employees under his supervision, including Plaintiff; Shao denied having employees inquire about Plaintiff's health condition and claimed to know little, if anything, himself about Plaintiff's health condition; and Shao denied that it was his responsibility to grant or deny FMLA leave.  Plaintiff asserts in his statement of facts that Shao denied his FMLA leave request in June of 2005 and ordered him to come to work or be terminated, and during this conversation, Plaintiff indicated that he was going to sue Avon and Shao.  Plaintiff also asserts that Shao testified that Plaintiff was the only employee he knew of who had been terminated for arguing with a co-worker.

8

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA defines the term "serious health condition" to mean "an illness, injury, impairment, or physical or mental condition that involves--(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).  The Sixth Circuit recognizes two distinct theories for recovery under the FMLA: (1) the "interference" theory arising from 29 U.S.C. § 2615(a)(1), and (2) the "retaliation" or "discrimination" theory arising from 29 U.S.C. § 2615(a)(2)." Hoge v. Honda of America Mfg., Inc., 384 F.3d 238, 244 (6th Cir. 2004).  The Court will address the interference theory of recovery first.

1. FMLA Interference Claim

The FMLA prohibits an employer from interfering with the exercise of, or the attempted exercise of, any right provided under that subchapter.  29 U.S.C. § 2615(a)(1). To establish an interference claim, the plaintiff must show that (1) he was an eligible employee, (2) the defendant is a covered employer, (3) the plaintiff was entitled to leave under the FMLA, (4) the plaintiff gave the employer notice of his intent to take leave, and (5) the employer denied him FMLA benefits or interfered with FMLA rights to which he was entitled.  Hoge, 384 F.3d at 244 (citing Cavin v. Honda of America Manufacturing Inc., 346 F.3d 713, 719 (6th Cir. 2003)).

Nothing in the FMLA imposes a duty on the employer to affirmatively grant leave without a request or notice by the employee.  Brohm v. JH Properties, Inc., 149 F.3d 517, 523 (6th Cir. 1998).  Rather, to invoke the protection of the FMLA, an employee must inform his employer of the need for leave and the qualifying reason for the leave.  Id. (citing Manuel v. Westlake Polymers Corp., 66 F.3d 758, 762 (5th Cir. 1995)).  The eligible employee must also give the employer this substantive notice within the requisite time frame. The time frame depends on the foreseeability of the needed leave.  Title 29 C.F.R. § 825.302 sets forth notice requirements where the need for leave is foreseeable.  It provides that the employee must provide the employer "at least 30 days advance notice" or, if that is not practicable, then notice must be given "as soon as practicable." Subsection (b) defines "as soon as practicable" to mean "as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case . . . ." The regulation further provides as follows:

> (d) An employer may also require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave. For example, an employer may require that written notice set forth the reasons for the requested leave, the anticipated duration of the leave, and the anticipated start of the leave. However, failure to follow such internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice.

Where the need for FMLA leave is not foreseeable, 29 C.F.R. § 825.303 specifies the time frame and the method for providing notice:

> (a) When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as

soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible. . . .

(b) The employee should provide notice to the employer either in person or by telephone . . . The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means. The employee . . . will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation.

The Sixth Circuit in Cavin, 346 F.3d at 723-24, summarized the notification requirements of the FMLA as follows:

[T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave. However, '[a]n employee does not have to expressly assert his right to take leave as a right under the FMLA.' Because an employee need not expressly invoke the FMLA, '[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.' '[A]n employee gives his employer sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in the FMLA § [2612(a)(1)] has occurred.' (internal citations omitted).

The adequacy of notice is a mixed question of fact and law. Id. at 723. The question of whether notice was given and, if so, what the notice consisted of and when it was provided, is a question of fact while the question of whether the notice satisfied the statutory requirements is a question of law. Id.

Defendants claim that they are entitled to summary judgment on Plaintiff's FMLA claim because it is undisputed that Plaintiff's January 2003 leave of absence was not

FMLA leave since he was not an eligible employee as of that date, having worked for

Avon for only two months; Plaintiff never completed the forms necessary for intermittent

leave for days in 2005; and Plaintiff purportedly completed FMLA leave request forms for

leave in January 2006 only after he had been notified of his termination.

It does not appear that Plaintiff is bringing an FMLA interference claim in

connection with his January 2003 leave.  Insofar as Plaintiff premises any of his FMLA

claims on his January 2003 leave, Defendants are correct in stating that Plaintiff was not

an eligible employee under the FMLA as of January 2003 since he had been hired in

December 2002.  See Cobb v. Contract Transport, Inc., 452 F.3d 543, 551 (6th Cir. 2006)

(citing 29 U.S.C. § 2611(2)(A)(i)) (an employee is eligible for FMLA leave only after

working for a covered employer for at least twelve months.)

As for the June 2, 2005 incident, Plaintiff has not come forward with sufficient

evidence to create a genuine issue of material fact on all of the essential elements of an

interference claim arising from this incident.  Plaintiff gave the following testimony

regarding the June 2005 incident: His diverticulitis had been bothering him during the

week of June 2, 2005, and he called Ms. Shaw to take some personal time because he had

no sick or vacation time left.  His request for personal time was denied.  Plaintiff then

called in and said that he had a serious medical condition, he had to go to the hospital, he

could not come in to work, and the leave he was requesting was medical leave under the

FMLA.  However, he was told by Shao to come in to work or he would be fired based on

the number of occurrences he would otherwise accrue.  Plaintiff had filled out FMLA

forms when he was diagnosed with his condition, and the medical department at Avon

knew that he had a disability.  Plaintiff cannot recall with any certainty, however, whether he had submitted the FMLA forms his doctor completed in the spring of 2003 to Avon, but his doctor informed him that he had filled out the forms.  Plaintiff does not recall whether he returned the forms to Avon himself, but he believes he may have e-mailed them. Plaintiff saw a doctor on June 3, 2005.  He obtained a form stamped by Robert Dennis, M.D., which states that Plaintiff had been under the doctor's care from June 2-3, 2005, and he would be able to return to work on the latter date. The form contains no other information, including what illness or injury Plaintiff was under the doctor's care for. Defts.' exh. 18 (doc. no. 23, att. 20); Pltf.'s depo., pp. 121-125, 134, 210-212, 248-49.

        According to Defendants, when Plaintiff initially called in to work in June of 2005, he requested a personal day.  Ms. Shaw informed Plaintiff that his request was denied because Plaintiff's co-worker on the third shift had requested and received approval for a sick day and Avon needed the coverage in the lab.  Plaintiff then said he had a medical condition and he was covered under the FMLA.  After Plaintiff's phone call, Defendant Gutzwiller met with Defendant Shao, Ms. Shaw, and Debbie Watson to discuss the incident.  He asked if they were aware of any notification from Avon's medical group that Plaintiff was under FMLA protection and whether he had filed any FMLA paperwork, and it was Gutzwiller's understanding that they checked and that nothing had been filed. Gutzwiller did not handle FMLA forms or matters himself as this was the job of Avon's medical department, but he would be advised of an employee's need for FMLA leave if necessary.  Gutzwiller told Plaintiff at that point that he had no FMLA paperwork filed with Avon's medical department and that if Plaintiff had a medical situation that would

result in FMLA consideration, he needed to see the Medical Department or Human Resources Department and file the proper paperwork.  Gutzwiller set up an appointment for Plaintiff to see Human Resources so that Plaintiff would know what the paperwork was, and that meeting occurred after Plaintiff had called off work.  Plaintiff did not fill out paperwork for FMLA leave in June 2005.  Gutzwiller was aware that Plaintiff had previously taken a leave of absence for a medical situation.  Aside from the first FMLA forms Dr. Humphries allegedly filled out for that 2003 leave, there were no re-certification forms filled out.  Plaintiff never filled out forms for intermittent FMLA leave.  Pltf.'s depo., pp. 120-121, 148; Gutzwiller depo., pp. 21-22; Gutzwiller Affidavit, doc. 33, exh. 1.

Based on these undisputed facts, a reasonable jury could not conclude that Plaintiff was entitled to leave under the FMLA or that Defendants denied him FMLA benefits to which he was entitled.  There is no evidence that Plaintiff was unable to perform the functions of his job position on the day he called in sick.  To the contrary, Plaintiff did come in to work that day despite calling in sick, and there is no allegation or indication in the record that he was unable to perform the functions of his position for the duration of his shift.  Aside from the fact that he did work his shift, the evidence does not permit a finding that Plaintiff gave Defendants enough information for Avon to reasonably conclude that an event described in § 2612(a)(1) had occurred.  Plaintiff took no steps to obtain FMLA leave certification following this incident, and the doctor's note he obtained does not give a reason for his absence.  Finally, Plaintiff has not shown that he suffered any adverse consequences as a result of his request that he be granted FMLA leave on

14

June 2, 2005.  To the contrary, he continued to work for approximately six months until

the confrontation with Mr. Robinson.  Thus, Plaintiff has no claim for FMLA interference

based on his request for sick leave on June 2nd.

Turning to Plaintiff's contentions concerning the denial of FMLA leave following

his discharge, Plaintiff asserts that he was provided with a document entitled "FMLA

Denial Letter" dated January 13, 2006.  He notes that the letter "does not specify the date,

in which the alleged FMLA leave had been requested" by him.  He notes that Avon's

policy regarding FMLA leave pertaining to unforeseen leave states that the employee's

failure to provide the required medical certification within 15 days of being required to do

so may result in denial of the employee's continued leave.  Plaintiff asserts that in this

case, Avon denied the FMLA leave orally, did not indicate the reason for the denial, and

delivered a denial letter to Plaintiff approximately five weeks after his discharge.  Plaintiff

alleges that under these circumstances, there are genuine issues of material fact regarding

his claims for FMLA interference, retaliation, and discrimination.

According to Plaintiff's deposition testimony and the other evidence of record,

while Plaintiff was on suspension on November 19, 2005, he requested FMLA forms for

his surgeon to fill out.  Pltf.'s depo., pp. 130, 280.  The record includes a form titled

"Request for FMLA Forms," which Defendants gave Plaintiff to fill out.  Defts.' exh. 26

(doc. no. 23, att. 21).  The form is dated November 29, 2005, and it indicates that it was

hand-delivered to Plaintiff.  The request form acknowledges that Plaintiff had made a

request for FMLA forms and that three FMLA forms are attached to the request form: (1)

a form advising Plaintiff of his rights under the FMLA, (2) a request for FMLA leave,

which Plaintiff was required to complete, and (3) a "Certificate of Health Care Provider,"
which Plaintiff's health care provider was required to complete.  The request form
instructs Plaintiff that the forms to be completed by him and his health care provider must
be completed and returned to the Medical Department within 15 calendar days from
receipt and directs him where to return the completed forms.

Plaintiff filled out a form entitled "Avon Products, Inc. Request for Family Medical
Leave" on December 12, 2005, seeking leave commencing February 19, 2006, for surgery
that was to be performed on February 28, 2006.[1]  Defts.' exh. 32 (doc. no. 23, att. 21).
However, Plaintiff never submitted the completed form because he was discharged prior to
the surgery.  Pltf.'s depo., pp. 283-87.  Avon sent Plaintiff an "FMLA Denial Letter" dated
January 13, 2006, informing him that his request for leave had been denied based on his
failure to return the completed "Request for Family Medical Leave and/or the Certification
of Health Care Provider" forms within 15 days of receipt.  Defts.' exh. 33 (doc. no. 23, att.
21).

Plaintiff has failed to establish a claim for interference with his FMLA rights
stemming from his request for leave for his 2006 surgery.  There is no dispute that Plaintiff
never submitted the completed request forms and that the request was for leave following
Plaintiff's discharge by Avon, so that Plaintiff was not an eligible employee at the time of
the surgery.

For these reasons, Defendants are entitled to summary judgment on Plaintiff's

_____

[1] The form erroneously lists the dates for the leave and surgery as 2005.  Pltf.'s depo., p.
284.

claim for interference with his FMLA rights.

2.  <u>FMLA Discrimination Claim</u>

In order to establish an FMLA discrimination claim, a plaintiff must demonstrate that: (1) he was engaged in an activity protected by the FMLA; (2) the employer knew that he was exercising his rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. <u>Killian v. Yorozu Automotive Tennessee, Inc</u>., 454 F.3d 549, 556 (6th Cir. 2006) (citing <u>Arban v. West Publishing Corp</u>., 345 F.3d 390, 404 (6th Cir. 2003)). Plaintiff bears the burden of demonstrating a causal connection.  <u>Id</u>.  He must show that the employer's stated reason for terminating him was pretextual and that the true reason for his dismissal was the exercise of his rights under the FMLA.  <u>Id</u>.

Plaintiff claims that he has stated prima facie claims for FMLA retaliation or discrimination because he suffered from a serious health condition as that term is defined under the FMLA, he was an eligible employee during the period of time when FMLA leave was unjustifiably denied, and he was entitled to the FMLA leave that Avon denied. Plaintiff claims that Defendant Shao denied his FMLA leave request in June of 2005 and ordered him to come to work or be terminated, and during this conversation Plaintiff indicated that he was going to sue Avon and Shao.  Plaintiff also asserts that Shao testified that Plaintiff was the only employee he knew of who had been terminated for arguing with a co-worker.  Plaintiff contends that his termination was directly related to his health

17

condition.  In support of his contention, Plaintiff alleges that he was repeatedly harassed and questioned by co-workers regarding his health, Gutzwiller was aware of his health condition, and the alleged workplace violence incident leading to his termination arose from harassment by Mr. Robinson.

Plaintiff has not come forward with sufficient evidence to create a genuine issue of material fact as to whether Defendants retaliated against him for engaging in protected activity under the FMLA.  Plaintiff never made a request for FMLA leave in connection with his February 2006 surgery since he was discharged without ever submitting the forms he had requested, so he did not engage in protected activity in connection with that medical event. As to the June 2, 2005 incident, Plaintiff has not cited any authority for the proposition that threatening to sue an employer for denying the employee FMLA leave to which the employee is not entitled and for requiring the employee to instead come into work, is protected activity on the employee's part within the meaning of the FMLA. Assuming Plaintiff's verbal threat to sue Avon for disallowing him FMLA leave and requiring him to come to work constituted protected activity, Plaintiff has failed to show evidence of a causal connection between that threat and his termination more than six months later following his altercation with a co-worker and the investigation into that incident.  There is no evidence that Shao, the individual to whom he made the threat, was involved in the termination decision, and the six-month time lapse between the threat and the termination is too great to support an inference of a causal connection.  See Mickey v. Zeidler Toole & Die Co., 516 F.3d 516, 525 (6th Cir. 2008) ("where some time elapses

18

between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.")

Plaintiff has not come forward with evidence to show that he engaged in any other activity that could be considered protected activity under the FMLA or to show that Defendants terminated him for any activity related to the attempted exercise of his rights under the FMLA.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim for FMLA retaliation.

B.  Reverse Discrimination Claim

Defendants allege that they are entitled to summary judgment on Plaintiff's reverse discrimination claim because (1) Plaintiff has no direct evidence of reverse discrimination, and (2) he cannot establish that background circumstances exist to support the suspicion that Avon is that unusual employer who discriminates against the majority and that Avon treated employees differently who were similarly-situated but who were not members of the protected class.

Plaintiff claims that he was the victim of reverse discrimination in two respects. First, he claims that he was discriminated against by his "Korean supervisor" (presumably Defendant Shao)[2] and he was not considered for the Product Quality Advisor position, for which Defendant Shao was the only person interviewed.  Second, he claims that an

---

[2] Plaintiff alleges in his opposing memorandum that Shao is Chinese.  He does not identify any individual at Avon who is Korean.

African-American employee (presumably Mr. Robinson) harassed him regarding his diverticulitis/diverticulosis, and the "Korean supervisor" failed to take any corrective measures against Mr. Robinson and instead proceeded to take steps that led to Plaintiff's discharge from Avon.

In order to establish an employment discrimination claim, the plaintiff must either introduce direct evidence of discrimination or prove inferential and circumstantial evidence that would support an inference of discrimination. Kline v. TVA, 128 F.3d 337, 348 (6th Cir. 1997). If the plaintiff presents direct evidence of discrimination, the McDonnell-Burdine paradigm is of no consequence. Kline, 128 F.3d at 349. If direct evidence of discrimination is lacking, the plaintiff must prove a prima facie case of discrimination. The McDonnell-Douglas burden-shifting framework applies to discrimination claims based on circumstantial evidence brought under both Title VII and § 1981. Mitchell v. Toledo Hospital, 964 F.2d 577, 582 (6th Cir. 1992).

To establish a prima facie case of employment discrimination, a plaintiff must generally show that: 1) he is a member of a protected class; 2) he was qualified for the job; 3) he suffered an adverse employment decision; and 4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. Arendale v. City of Memphis, 519 F.3d 587, 603 (6th Cir. 2008) (citing Newman v. Fed. Express Corp., 266 F.3d 401, 405 (6th Cir. 2001)). A plaintiff who is a member of a majority group who claims "reverse discrimination" in the employment context bears the burden of "demonstrating that he was intentionally discriminated against

20

'despite his majority status.'" Id. (citing Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir. 1985)). In such a case, the first prong of the prima face case is adapted to require the plaintiff to prove "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." Id. (citing Sutherland v. Mich. Dep't of Treasury, 344 F.3d 603, 614 (6th Cir. 2003) (internal quotations omitted)).[3] To establish such background circumstances, the plaintiff can present "evidence [that defendants'] unlawful consideration of race as a factor in hiring in the past justifies a suspicion that incidents of capricious discrimination against whites because of their race may be likely." Zambetti, 314 F.3d at 256 (citing Jamison v. Storer, 1987 WL 44901, at *3 (6th Cir.) (unpublished decision)).

If plaintiff establishes his prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). If the defendant carries this burden, the plaintiff must prove that the proffered reason is pretextual. Id. The United States Court of Appeals for the Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) the defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the discharge; or 3) the reasons were insufficient to warrant a discharge. Manzer

---

[3] Some panels of the Sixth Circuit have questioned whether the "background circumstances" prong may impermissibly impose a heightened pleading standard on majority victims of discrimination. See Zambetti v. Cuyahoga Community College, 314 F.3d 249, 257 (6th Cir. 2002); Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 801 n. 7 (6th Cir. 1994). The Sixth Circuit has nonetheless continued to apply the "background circumstances" analysis.

v. Diamond Shamrock Chemicals Company, 29 F.3d 1078, 1084 (6th Cir. 1994).

Plaintiff has no direct evidence of discrimination, so he must rely on circumstantial evidence to establish his case.  Plaintiff has failed to make a prima facie showing of reverse discrimination with respect to his failure to be considered for the Product Quality Advisor position.  Gutzwiller, a white male, testified at his deposition that he recommended Shao for the Product Quality Advisor position to his boss, Nicki Henson, and that Plaintiff was not qualified for the position because he did not have enough experience and he had been rated below expectation for dealing with other people. Gutzwiller depo., pp. 13-14.  Plaintiff has made no allegations that call into question the veracity of Gutzwiller's testimony.  Nor has Plaintiff come forward with evidence of background circumstances to support the suspicion that Avon is that unusual employer who discriminates against the majority.  Plaintiff's bare allegations that he was not considered for the position and that "the Korean individual" was the only individual interviewed for the position are insufficient to create a genuine issue of material fact as to whether he was the victim of reverse discrimination.

In response to Plaintiff's contention that an African-American employee (presumably Mr. Robinson) harassed him regarding his diverticulitis/diverticulosis and the "Korean supervisor" (presumably Defendant Shao) failed to take any corrective measures against him and instead took steps that led to Plaintiff's discharge, Defendants contend that it is clear from the deposition testimony that Shao did not participate in either the termination investigation or the termination decision.  Gutzwiller depo., p. 38; Shao depo.,

pp. 23-27.  Plaintiff has produced no evidence that Shao did in fact participate in the decision to discharge him.  Moreover, Plaintiff has come forward with no evidence of "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority."

Even if Plaintiff had come forward with sufficient evidence to establish a prima facie case, Defendants have proffered a legitimate, nondiscriminatory reason for his termination, i.e., Plaintiff instigated an altercation with a co-worker.  Plaintiff has not come forward with evidence to show that the proffered reason is a pretext for race discrimination.  Defendants are therefore entitled to summary judgment on Plaintiff's claim that he was terminated based on his race.

C.  <u>ADA Claim</u>

Plaintiff alleges in the complaint that Avon engaged in disability discrimination by consenting to constant harassment of him due to his medical condition and by refusing to allow a reasonable accommodation in accordance with the ADA.  Plaintiff also claims that Avon engaged in retaliatory discrimination based on his disability and/or perceived disability and/or his record of such an impairment.  In his response to Defendants' motion for summary judgment, Plaintiff argues only that there is direct evidence of discrimination in that Defendant Shao refused to permit Plaintiff to take FMLA leave when he was suffering from a "serious health condition," i.e., diverticulitis/diverticulosis, and that he has presented sufficient evidence to establish a prima facie case for retaliatory discharge under the ADA and the FMLA.  In support of the latter claim, Plaintiff alleges that an individual need not be a qualified individual with a disability in order to pursue a retaliation claim.

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual."  42 U.S.C. § 12112(a).  Ohio Rev. Code § 4112.02 makes it an unlawful discriminatory practice "[f]or any employer, because of the . . . disability . . . of any person, to discharge without just cause . . . or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment . . ."  The same analysis generally applies to disability discrimination claims under the Ohio statute and the ADA.  <u>Kleiber v. Honda of America Mfg., Inc</u>., 485 F.3d 862, 872 (6th Cir. 2007) (citing <u>Brenneman v. MedCentral Health Sys</u>., 366 F.3d 412, 418 (6th Cir. 2004)).

In order to state a claim under the ADA, the plaintiff must demonstrate "(1) that [he] is a disabled person within the meaning of the Act, (2) that [he] is qualified to perform the essential functions of [his] job with or without reasonable accommodation, and (3) that [he] suffered an adverse employment decision because of [his] disability." McKay v. Toyota Motor Mfg., U.S.A., Inc., 110 F.3d 369, 371 (6th Cir. 1997).  The plaintiff has the initial burden of proposing an accommodation and showing that it is objectively reasonable. Monette v. Electronic Data Systems Corp., 90 F.3d 1173, 1183 (6th Cir. 1996).

In determining whether an individual is disabled, an individualized inquiry must be made and measures that mitigate the individual's impairment must be taken into account. Cotter v. Ajilon Servs., Inc., 287 F.3d 593, 598 (6th Cir. 2002) (citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 475, 483 (1999)).  An individual is considered "disabled" under the ADA if he:

> (A) [has] a physical or mental impairment that substantially limits one or
> more of the major life activities of such individual;
> (B) [has] a record of such an impairment; or
> (C) [is] regarded as having such an impairment.

42 U.S.C. § 12102(2).  The regulations accompanying the ADA define a "physical or mental impairment" as including "[a]ny physiological disorder, or condition" affecting the digestive system.  29 CFR § 1630.2(h).

The term  "substantially limits" is defined to mean,

> (i) Unable to perform a major life activity that the average person in the
> general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under
> which an individual can perform a particular major life activity as compared
> to the condition, manner, or duration under which the average person in the

general population can perform that same major life activity.

29 CFR § 1630.2(j)(1).

The regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i).  The regulations set forth the following factors to be considered in determining whether an individual is "substantially limited" in a major life activity:

> (i) The nature and severity of the [claimant's] impairment;
> (ii) The duration or expected duration of the impairment; and
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

The terms "substantially limits" and "major life activity" must be "interpreted strictly to create a demanding standard for qualifying as disabled."  Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002).  Any impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation under the ADA.  Mahon v. Crowell, 295 F.3d 585, 590-91 (6th Cir. 2002).

To establish that he is "disabled" within the meaning of the ADA and § 4112.12, Plaintiff simply alleges that diverticulitis/diverticulosis has been held to constitute a "disability" under the ADA and he cites cases and a medical treatise in support of this proposition.  None of these authorities supports plaintiff's proposition.  In Branch v. City of New Orleans, 1995 WL 295320 (E.D. La.), aff'd, 78 F.3d 582 (5th Cir. 1996) (Table), the

26

plaintiff suffered from ulcerative colitis, also known as Crohn's disease, which is not the same disease Plaintiff suffers from. Moreover, in ruling on the plaintiff's post-trial motion, the court did not make a blanket finding that Crohn's disease constitutes a disability, but instead the court found the record was devoid of evidence suggesting that Crohn's disease is inherently substantially limiting. The court acknowledged that while there was no real dispute that the plaintiff's disease constituted an impairment within the meaning of the relevant statutes, the jury could rely on the evidence that the plaintiff's flare-ups of the disease were intermittent, were limited in duration, and generally did not require her to substantially modify her daily regimen to conclude that the disease did not substantially limit her major life activities. In the second case, Jones v. Hodel, 711 F. Supp. 1048, 1049 (D. Utah 1989), the plaintiff likewise suffered from Crohn's disease rather than from diverticulitis/diverticulosis and had undergone the removal of his colon, which affected his digestive system and limited his performance of the major life activities of caring for himself and doing manual tasks. The plaintiff therefore was, by definition, a "handicapped individual" under the governing regulations then in effect. Finally, the medical treatise cited by Plaintiff, 16-231 Attorneys Textbook of Medicine (Third Edition) P 231.60, in no manner suggests that every individual who suffers from diverticulitis/diverticulosis is "disabled" within the meaning of the ADA and § 4112.12.

Plaintiff offers no individualized evidence which suggests that his diverticulosis/diverticulitis constitutes a disability as that term is defined under the relevant statutes and regulations. The evidence shows that, at most, he suffers from flare-ups of the

disease which intermittently prevent him from performing major life activities for brief periods of time. There is likewise no evidence to show that Avon regarded him as disabled. Because Plaintiff cannot satisfy this essential element of a disability discrimination claim, Avon is entitled to summary judgment on the claim. Insofar as Plaintiff alleges that Avon failed to provide a reasonable accommodation for him, Avon is entitled to summary judgment on the disability discrimination claim for the additional reason that Plaintiff never requested any type of accommodation for his alleged disability.

With respect to his retaliation claim under the ADA, Plaintiff contends that in order to establish a prima facie case of retaliation, he must prove by a preponderance of the evidence that: 1) he engaged in protected activity; 2) the exercise of his rights was known by the defendant; 3) defendant thereafter took an employment action adverse to the plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action. DiCarlo v. Potter, 358 F.3d 408, 420 (6th Cir. 2004) (setting forth the elements for a claim of retaliation under Title VII). Plaintiff asserts that he engaged in protected activity by threatening to sue Avon for failing to allow him to take sick leave/FMLA leave for his diverticulitis/diverticulosis and that Avon retaliated against him by terminating him within six months of that incident for the given reason that he had been involved in an argument with a co-worker, even though no employee had ever been discharged for an argument with a co-worker and the argument concerned the co-worker's inappropriate inquiries into Plaintiff's health condition.

Plaintiff's alleged threat to sue Avon for an FMLA violation does not constitute

protected activity under the ADA.  In any event, Plaintiff has not come forward with evidence to establish a causal connection between his threat and his termination for the reasons stated earlier in connection with Plaintiff's FMLA claim.  Plaintiff has failed to create a genuine issue of material fact on his ADA retaliation claim, and Defendants are entitled to summary judgment on the claim.

D.  Public Policy Claim

Plaintiff alleges that he has stated a claim for wrongful discharge in violation of Ohio public policy by presenting evidence to show that his termination was proximately related to his disability, which constituted a "'serious health condition' under the FMLA" and which public policy protects.  Plaintiff also contends that he was wrongfully discharged in violation of public policy under state law because Shao denied FMLA leave to him and terminated him for having a confrontation with an employee who had been harassing Plaintiff regarding his "serious health condition."

Ohio recognizes the tort of wrongful discharge in violation of public policy as an exception to the employment-at-will doctrine.  Greeley v. Miami Valley Maintenance Contrs., Inc., 49 Ohio St.3d 228 (1990).  The tort requires four elements: (1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked overriding

legitimate business justification for the dismissal (the overriding justification element).

Collins v. Rizkana, 73 Ohio St.3d 65, 69-70 (1995) (citing H. Perritt, The Future of

Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58

U.Cin.L.Rev. 397, 398-99).

Ohio does not recognize a public policy tort based solely on a discharge in violation

of the FMLA.  See Wiles v. Medina Auto Parts, 96 Ohio St.3d 240, 246 (2002).  In

addition, as discussed above, Plaintiff has not come forward with evidence to show that he

was terminated on account of a "disability," and he therefore cannot satisfy the "jeopardy"

element of his public policy tort claim.  Accordingly, Defendants are entitled to summary

judgment on this claim.

E.  Retaliation Claim

As his sixth claim for relief, Plaintiff alleges that Defendants engaged in retaliatory

discrimination, which included harassment and discharge, based on his complaints of

wrongful denial of overtime hours, including the reporting of wage and hour violations to

the United States Department and Labor ("DOL"), and his claiming of rights under the

FMLA.  The Court has addressed Plaintiff's claims under the FMLA and found them to be

without merit.  Plaintiff makes no allegations concerning the reporting of wage and hour

violations or complaints of wrongful denial of overtime hours in his opposing

memorandum.  Accordingly, Defendants are entitled to summary judgment on this claim

for relief.

F.  Plaintiff's Motion to Strike

Plaintiff moves to strike from the record Exhibit G to Defendants' Motion for Summary Judgment.  The exhibit is correspondence Defendants' counsel received from the DOL dated January 7, 2008, in response to counsel's request for information regarding any complaint Plaintiff may have filed with the DOL regarding Avon, which states that the DOL had concluded it did not have any history on the requested subject.  Plaintiff moves to strike the exhibit from the record on the grounds that it is an unauthenticated document which Defendants did not produce during discovery and which appears to have been produced in response to an improper Freedom of Information Act request by Defendants' counsel.  As stated above, Plaintiff makes no allegations concerning his alleged reporting of wage and hour violations or complaints of wrongful denial of overtime hours in his memorandum in opposition to the summary judgment motion.  Accordingly, there is no need to address the admissibility of the exhibit, and Plaintiff's motion to strike Exhibit G is moot.

V. <u>Conclusion</u>

In accordance with the foregoing, Defendants' Motion for Summary Judgment (doc. no. 22) is **GRANTED**.  Plaintiff's Motion to Strike Exhibit G to Defendants' Motion for Summary Judgment (doc. no. 30) is **DENIED** as moot.  Plaintiff's claims are **DISMISSED WITH PREJUDICE**.  **THIS CASE IS CLOSED.**

**IT IS SO ORDERED.**

Date:   July 29, 2008          S/ Sandra S. Beckwith
                               Sandra S. Beckwith, Chief Judge
                               United States District Court

31